Christopher J. Reichman SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>HARTFORD FUNDING LTD.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant HARTFORD FUNDING LTD. is, and at all times herein mentioned was, a New York Limited Liability Company, headquartered in the State of New York, doing business in the County of Orange, State of California (hereinafter referred to as “Defendant” and/or “HARTFORD”).

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. (“TCPA”). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 386 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an ‘existing business*

*relationship' at any time from October 22, 2021, to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. HARTFORD is engaged in a scheme to sell financial consultation services and/or mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry which HARTFORD calls without prior express written consent.

8. Thus, HARTFORD is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, HARTFORD, either directly or through the use on an agent at the direction of HARTFORD calls various numbers in the United States to sell HARTFORD's financial services without regard to whether those numbers are on the Do Not Call Registry or not.

10. HARTFORD and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. HARTFORD has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

///

## FACTUAL DETAILS RE NAMED PLAINTIFF

13. Defendants made twelve (12) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial and/or mortgage services on the following dates and times and using the following Caller ID ("CID") numbers:

- October 22, 2021, 11:43 am, CID 310-444-8941
- October 22, 2021, 11:51 am, CID 516-595-7653
- October 22, 2021, 11:55 am, CID 310-444-9692
- October 22, 2021, 2:44 pm, CID 213-260-9143
- October 22, 2021, 2:30 pm, CID 213-260-9143
- October 22, 2021, 2:32 pm, CID 310-444-3620
- October 25, 2021, 10:27 am, CID 516-595-7653
- October 25, 2021, 2:22 pm, CID 213-260-9143
- October 26, 2021, 10:27 am, CID 516-454-1065
- October 27, 2021, 9:43 am, CID 516-454-1065
- January 26, 2022, 1:06 pm, CID 516-595-7661
- February 26, 2022, 4:36 pm, CID 516-595-7652

14. Mr. Sapan made a log of all the calls he received from HARTFORD during or shortly after receiving the calls which includes the date and time of the call and the Caller ID information as well as brief notes about what happened during the calls which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

15. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered

on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

16. Mr. Sapan never gave any HARTFORD or any other person, agent, employee or entity associated with HARTFORD express written permission to call him, nor does he have an established business relationship nor personal relationship with HARTFORD or any other person, agent, employee or entity associated with HARTFORD.

17. In a span of time from October 22, 2021, to February 26, 2022, HARTFORD transmitted twelve (12) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

18. During the first call on October 22, 2021 at 11:43 am, HARTFORD used Caller ID Number 310-444-8941 and illegally blocked a Caller ID Name from appearing and, since he could not tell who was calling, Mr. Sapan answered the call

19. The caller identified herself as "Anna" with "Mortgage Solutions" and asked Mr. Sapan if he was looking to refinance his home.

20. Since there is no company called "Mortgage Solutions" and Mr. Sapan knew that junk telemarketers constantly use vague and generic faked company names to introduce their pitches in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was.

21. Mr. Sapan said he might be interested and Anna brought her "supervisor", a women named "Lily", on the line to verify some information, and after talking to Lily was transferred to a "Joseph Getzuzzo" from "Hartford Funding". Joseph informed Mr. Sapan they were located in Woodbury, New York, after which the call was dropped.

22. "Joseph Getzuzzo", without consent, called again approximately eight minutes later on October 22, 2021, at 11:51 am, this time using CID 516-595-7653

but still illegally blocking the Caller ID Name. Mr. Sapan missed the call and was left a voicemail by "Joseph Getzuzzo".

23. HARTFORD transmitted the next call to Mr. Sapan approximately 4 minutes later on October 22, 2021, at 11:55 am using the CID 310-444-9692 again with no Caller ID Name. It was "Anna" again apologizing for the dropped call and transferred Mr. Sapan to "Hartford Funding" before the call was dropped.

24. The next call came approximately 2 hours after at 2:44 pm from CID 213-260-9143 with "Anna" once again calling and attempted to transfer Mr. Sapan to her agent. This went to a hold message for "Hartford Funding" at which point Mr. Sapan hung up the call.

25. HARTFORD once again called from the same CID as the previous call and "Anna" once again attempted to transfer the call when Mr. Sapan hung up.

26. Once again on October 22, 2021, HARTFORD called from CID 310-444-3620 "Anna" was calling back and Mr. Sapan hung up.

27. The next 4 calls happened between October 25, 2021 and October 27, 2021.

28. The first call on October 25, 2021, at 10:27 am was from a CID 516-595-7653 and was a missed call but the Call Id stated it was from "Hartford Funding".

29. Again, on October 25, 2021, at 2:22 pm Mr. Sapan was called by CID 213-260-9143 that he did not answer

30. On October 26, 2021, at 10:27 am and October 27, 2021, at 9:43 am Mr. Sapan was called by CID 516-454-1065 but did not answer either call but the Call Id stated it was from "Hartford Funding" for both calls.

31. On January 26, 2022, at 1:06 pm Mr. Sapan was called by CID 516-595-7661 and the speaker on the line identified themselves as "Stan" with Hartford Funding, but "Stan" could not hear Mr. Sapan and hung up the call.

32. The final call was transmitted on February 26, 2022, at 4:36 pm from CID 516-595-7652 in which Mr. Sapan did not answer but was left a voicemail from "Jared" however it was hard to hear the voicemail so.

33. Plaintiff pleads on information and belief that "Mortgage Solutions" is a false and faked name, and it is either a name being used by HARTFORD directly, or alternatively is a fake name used by an agent hired by HARTFORD to make illegal telemarketing calls at the direction and control of HARTFORD.

34. Plaintiff pleads on information and belief that "Anna" whom he spoke with on October 22, 2021, is an employee directly for HARTFORD, or in the alternative is an employee of agent of HARTFORD making illegal telemarketing calls at the direction and control of HARTFORD.

35. Plaintiff pleads on information and belief that "Lily" whom he spoke with on October 22, 2021, call is an employee directly for HARTFORD, since she self-identified as being with HARTFORD during the call and that is a real company not a made-up name.

36. Plaintiff pleads on information and belief that "Joseph Getzuzzo" whom he spoke with on October 22, 2021, is an employee directly for HARTFORD, or in the alternative is an employee of agent of HARTFORD making illegal telemarketing calls at the direction and control of HARTFORD.

37. Plaintiff pleads on information and belief that HARTFORD is the owner and controller of all of the CID numbers listed in Paragraph 13 above, and which were the CID numbers for all of the alleged calls in this case.

38. Plaintiff pleads on information and belief that to the extent HARTFORD relies on any agent or other entity to make telemarketing calls on its behalf, HARTFORD has direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

39. Alternatively, Plaintiff pleads on information and belief that to the extent HARTFORD relies on any agent or other entity to make telemarketing calls

on its behalf, HARTFORD hired that agent to interact with the public on HARTFORD's behalf and therefore gave implied authority to represent HARTFORD.

40. Alternatively, Plaintiff pleads on information and belief that HARTFORD ratified the making telemarketing calls on its behalf by its agents by knowing of the illegal conduct and failing to repudiate the conduct.

41. Defendant may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF HARTFORD

42. In the first call received by Mr. Sapan on October 22, 2021, Mr. Sapan spoke with at least one person who was a direct employee of HARTFORD, "Joseph Getuzzo", who stated he worked for HARTFORD before the call got cut off.

43. Plaintiff also pleads on information and belief that "Anna", "Lily", "Stan" and "Jared" are employees of HARTFORD.

44. "Anna" and "Lily" of the fictitious "Mortgage Solutions" stated without prompting or leading that HARTFORD was their "partner" before bringing "Joseph Getzuzzo" of HARTFORD on the line and telling Mr. Sapan that they were "with the call center".

45. Additionally, Plaintiff pleads that HARTFORD is the owner and controller of all of the CID numbers listed in Paragraph 13 above, and which were the CID numbers for all of the alleged calls in this case which would make them directly liable for the calls.

## AGENCY LIABILITY ALLEGATIONS

46. Plaintiff pleads on information and belief that the officers, managers and employees for HARTFORD knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

47. Plaintiff pleads on information and belief that to the extent HARTFORD may have relied on any agent or other entity to make telemarketing calls on its behalf, HARTFORD had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct HARTFORD representatives into the call to attempt to complete the sale.

48. Alternatively, Plaintiff pleads on information and belief that to the extent HARTFORD may have relied on any agent or other entity to make telemarketing calls on its behalf, HARTFORD hired that agent to interact with the public on HARTFORD's behalf and therefore gave implied authority to represent HARTFORD.

49. Alternatively, Plaintiff pleads on information and belief that HARTFORD ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

50. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

51. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD knew or reasonably should have known that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

52. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD explicitly condoned the

actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

53. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of HARTFORD.

54. Plaintiff pleads on information and belief that all persons representing themselves to be from "Mortgage Solutions" and any entity using the name "Mortgage Solutions" are all agents of HARTFORD hired by HARTFORD to conduct telemarketing on HARTFORD's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of HARTFORD.

## **"ON BEHALF OF" LIABILITY ALLEGATIONS**

55. Plaintiff pleads that all calls complained of above were made "on behalf of" HARTFORD within the meaning of those words as used in title 47 of the United States Code section 227(c)(5): "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

56. Plaintiff contends that "on behalf of" liability is a broader standard than traditional agency liability.

57. Plaintiff pleads on information and belief that HARTFORD hired, retained, instructed or allowed any entity or person who made the alleged calls to makes those calls on behalf of HARTFORD in order to sell HARTFORD's financial products.

58. Additionally, any call which was transferred to an employee of HARTFORD was made on behalf of HARTFORD to sell their services.

59. Plaintiff pleads on information and belief all persons representing themselves to be from "Mortgage Solutions" and any entity using the name "Mortgage Solutions" are all agents of HARTFORD hired by HARTFORD to conduct telemarketing on HARTFORD's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of HARTFORD.

## FINAL LIABILITY ALLEGATIONS

60. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

61. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD knew or reasonably should have known (implied agency), that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

62. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

63. Plaintiff pleads on information and belief that to the extent HARTFORD uses any agents to make calls, HARTFORD explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of HARTFORD.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

64. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

65. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

66. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

67. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

68. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

69. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

70. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

71. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

72. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from October 22, 2021, to the present, including up to and through trial.*

73. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

74. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

75. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

76. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

77. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

78. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

79. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

80. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION: TCPA VIOLATION**
**CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY**
**(On Behalf of the Plaintiff Class)**

81. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

82. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

83. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

84. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

85. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

86. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the

form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $500.00 for each violation of 47 U.S.C. § 227(b)(1)(B)
3. For an award of $1,500.00 for each such violation found to have been willful;
4. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

5. For attorney's fees pursuant to all applicable federal and state statutes;
6. For costs of suit herein incurred; and
7. For such further relief as the Court deems proper.

DATED: October 13, 2025 **PRATO & REICHMAN, APC**

/s/ Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan